Filed 4/7/25  P. v. Marquez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052283 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 23CR001532) |
| v. | |
| JOSE JESSE MARQUEZ, | |
| Defendant and Appellant. | |

Defendant Jose Jesse Marquez appeals from a judgment entered after conviction following a court trial.  Appointed counsel for Marquez filed a brief asking this court to review the record to determine whether there are any arguable issues.  (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Marquez was advised of the right to file a supplemental brief but has not responded.  Finding no arguable error that would result in a disposition more favorable to Marquez, we affirm the judgment.  We direct the trial court to amend the abstract of judgment to correct errors and omissions.

# I. FACTS AND PROCEDURAL BACKGROUND[1]

Between January and May 2023, members of the 4-H Club[2] of Gonzales High School kept animals in a locked area of the high school as part of a project associated with a livestock fair. Around 8:30 on the morning of February 18, 2023, some parents and the police were notified that some of the animals had been injured. Among the injured animals were "Hammy," a pig who was around three months old, and a three-month-old lamb, "Miles." Miles, who was dead, had multiple injuries to his head, as if he had been stabbed. The other lamb in the pen with Miles was bleeding but still alive. There was "blood everywhere" in Miles's pen. Hammy had a big gash to his head and was bleeding. Another lamb had wounds all over the top of his head and neck area. The injured animals had multiple wounds that looked like stab wounds. The students in the 4-H club who came to the school that morning and saw the wounded and dead animals were "hysterical."

The police reviewed video from the surveillance system at Gonzales High School that was taken around 2:00 a.m. on February 18. The video showed a person riding a red bicycle who went inside the restricted 4-H area. Once the individual entered the gate (which did not appear to be locked), they went into what looked like a tool shed. The video later depicts the person stabbing the animals.

An officer recognized the person in the video as Marquez, based on past police contact with him. A few days later, uniformed police officers went to arrest Marquez. During the arrest, Marquez was combative. Marquez walked away, disregarded the police's instruction to stop, and did not comply with other instructions. The police pointed a taser at Marquez. Marquez kicked another officer in the stomach.

---

[1] We take these facts from the evidence elicited at Marquez's trial.

[2] Students who participated in the 4-H club raised and cared for animals, such as sheep and pigs. Each student cared for one animal. After raising the animals for five months, the students would take the animals to the Salinas Valley Fair, where they would be shown and sold in a livestock auction.

In a subsequent search of Marquez's house, police locating clothing matching that of the person in the video from the high school. When interviewed by police, Marquez initially stated he was at the high school looking for tools but that he did not do anything else there. He later stated that he had injured the animals because he was upset with his mother. Marquez stated that he was " 'mad,' " took it out on the animals, and then passed out.

Elizabeth Quezada testified on behalf of Marquez at his trial. Quezada is Marquez's aunt; Quezada's sister adopted him. She stated that Marquez is an honest, kind, and loving person. He faced challenges growing up and has had "a lot of rejection." Marquez has psychological and substance abuse issues.

Marquez, who was then 32 years old, testified at trial on his own behalf. At the time of the incident, he was living with his mother, "had been going through a lot of things mentally and emotionally," and was arguing with his mother "almost daily." He recognized himself in the video surveillance but had no recollection of riding his bicycle to the high school or of injuring the animals. At the time of the incident, Marquez was an alcoholic and "an avid user of meth, mushrooms, and a whole lot of weed." Marquez was not sure whether he did not remember his actions because of "alcohol or stress or a mental breakdown." He did not remember anything about the incident, although he acknowledged he had gone to the high school to get a tool.

Marquez agreed that he appears to have been the one who hurt the animals. He did not try to kick the officers during his arrest, but his legs were "flailing around" as he was put into the police car. Marquez tried to comply with the instructions from the police officers.

Based on the events occurring at the high school and during Marquez's arrest, the district attorney charged Marquez in a first amended information with four counts of

animal cruelty (Pen. Code,[3] § 597, subd. (a); counts 1-4), with an allegation as to each count that he had personally used a deadly and dangerous weapon (a farm tool) (§ 12022, subd. (b)(1)); resisting an executive officer (§ 69; count 5); and second degree burglary of a noncommercial building (§ 459; count 6), with an allegation he had previously been convicted of a serious violent conviction (first degree burglary) (§§ 667, subd. (d) & 1170.12, subd. (b)) (prior strike allegation) and an allegation that he had previously been convicted of a serious felony (first degree burglary) (§ 667, subd. (a)(1)) (serious felony allegation). Marquez waived his right to jury trial and requested a trial before the court.

Marquez's trial took place on April 12 and 15, 2024.[4] After hearing the evidence and argument by counsel, the trial court found Marquez guilty on all counts and the allegations true. The court also found true the following factors in aggravation: California Rules of Court,[5] rule 4.421(a)(1) (the offenses involved great bodily injury), rule 4.421(b)(1) (the defendant engaged in serious violent and dangerous conduct), rule 4.421(b)(2) (the defendant's prior convictions are of increasing seriousness), and rule 4.421(b)(4) (the defendant was on probation or parole when the crime was committed). The court found not true that the victims were particularly vulnerable. (Rule 4.421(a)(3).)

Prior to sentencing, Marquez filed a motion to strike his prior strike conviction. Marquez argued that the court should dismiss his strike prior because the length of his sentence would otherwise be unjust; he successfully completed probation for his first degree burglary conviction; he would be 40 years old upon release from custody, even if the strike were dismissed; his prior conviction occurred five years earlier and in the interim he had had a "relative[ly] crime free lifestyle"; and his prior convictions resulted

---

[3] All further unspecified statutory references are to the Penal Code.
[4] Unless otherwise indicated, all dates were in 2024.
[5] All further unspecified rule references are to the California Rules of Court.

from an addiction to methamphetamine. As to his sentencing, Marquez urged the court to impose the low term on each count of conviction.

Marquez filed a statement of mitigation with the court, which detailed the drug use of his biological mother during pregnancy, his removal from her care and time with a foster family in which he was underfed, and his diagnoses of developmental delays, ADHD, and mental illness. Marquez did not complete high school and became addicted to methamphetamine. At the sentencing hearing, Marquez's trial counsel argued that Marquez exhibited symptoms associated with childhood trauma.

The district attorney opposed Marquez's motion to strike his prior strike conviction. The district attorney asserted that the facts of Marquez's 2019 strike prior were aggravated.[6] In 2018, Marquez had incurred a conviction for driving under the influence, in which he had a blood alcohol level of .19, hit a tree, rolled his vehicle, and caused extensive injuries to himself. He was placed on probation for five years and was on probation when the instant offenses occurred. Marquez had also incurred other misdemeanor convictions. The district attorney urged the trial court to impose the maximum sentence of 21 years eight months.

The trial court sentenced Marquez on June 18. The court denied Marquez's motion to strike his strike prior. The court found the nature of the strike was "extremely aggravat[ed]" and that it was relatively recent and similar in violence levels to the instant offense. The court also found the aggravating factors "greatly outweigh[ed]" those in mitigation. The court stated that it "did take into consideration the history of childhood trauma, as well as the significant substance abuse issues, in [its] determination of the appropriate sentence." The court also "considered the nature of the offense, the strike offense, and the extreme violence that occurred in both of these offenses."

---

[6] According to the district attorney, Marquez broke into the home of an ex-girlfriend, burned her personal possessions on the stove, which caused a fire that trapped her dog inside the home, and stole her electronics and jewelry.

The trial court denied probation and imposed six years on count 1 (consisting of the upper term of three years, doubled pursuant to strike law) and a one-year consecutive term for the weapon enhancement. On count 2, the court imposed a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law) and stayed the weapon enhancement. The court did not articulate the statutory basis for staying the enhancement. On count 3, the court imposed a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law) and a one-year consecutive term for the weapon enhancement. On count 4, the court imposed a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law) and stayed the weapon enhancement. On count 5, the court imposed a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law). On count 6, the court imposed a consecutive term of four years (consisting of the middle term of two years, doubled pursuant to strike law). The court imposed a five-year consecutive sentence for the serious felony enhancement. The court stated that the aggregate term imposed was 19 years four months. The court awarded 454 days of actual custody credits, 454 days of good/work time, for a total of 908 days of custody credits.

The trial court ordered a restitution fund fine of $5,000 (§ 1202.4, subd. (b)) and imposed and suspended a $5,000 parole revocation fund fine (§ 1202.45). The court ordered $240 as a court operations assessment (§ 1465.8, subd. (a)(1)) and a $180 court facilities assessment (Gov. Code, § 70370). The court reserved jurisdiction over restitution requested by the victims.[7] On July 26, the court issued an abstract of judgment for the sentence imposed on June 18. On June 20, Marquez filed a notice of appeal.

---

[7] The record on appeal does not indicate whether restitution was later ordered by the trial court.

On July 1, the court clerk entered an "[o]ut of [c]ourt" minute order that noted that Marquez "was sentenced to a total term of 19 year and 4 months" but "[u]pon completing the minute[s, the] total term summed up is 22 years 4 months." The trial court set a subsequent date for "[r]eview of [s]entence."

On July 11, the trial court held a hearing for "clarification of [the] sentence imposed."[8] The court denied probation and imposed six years on count 1 (consisting of the upper term of three years, doubled pursuant to strike law) and a one-year consecutive term for the weapon enhancement. On count 2, the court ordered a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law) and a one-year "concurrent term" for the weapon enhancement.[9] On count 3, the court ordered a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law) and a four-month consecutive term for the weapon enhancement (one-third of one year). On count 4, the court ordered a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law) and a four-month consecutive term for the weapon enhancement (one-third of one year). On count 5, the court imposed a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law). On count 6, the court imposed a consecutive term of one year four months (consisting of one-third the middle term of eight months, doubled pursuant to strike law). The court imposed a five-year consecutive sentence for the serious felony enhancement. The aggregate term imposed by the court was 19 years four months. On July 26, the court issued an amended abstract of judgment reflecting the sentence imposed by the court on July 11 (which the court characterized as a clarification of the June 18 sentence).

---

[8] The record on appeal does not contain a reporter's transcript for this proceeding.
[9] A corrected minute order states that the sentence on the weapon enhancement attached to count 2 was "stayed PC 654."

7

On September 19, Marquez's appointed appellate counsel wrote a letter to the trial court informing the court that counsel believed that Marquez should have been awarded 482 days of credit for actual days in presentence custody and 482 days of credit for good conduct in presentence custody. Appellate counsel noted that Marquez had entered custody 30 days earlier than noted in the probation report (February 23, 2023, instead of March 23, 2023), resulting in 482 days (not 454 days as awarded by the court) of actual days of presentence custody. Appellate counsel requested that the court award Marquez a total of 964 days of custody credits.

On October 2, the trial court issued a corrected order nunc pro tunc. The court awarded Marquez 482 days of days of credit for actual days in presentence custody and 482 days of credit for good conduct in presentence custody for a total of 964 days. On October 3, the trial court issued a second amended abstract of judgment that reflected the updated custody credit order. The date of hearing on the second amended abstract of judgment is listed as "August 20, 2024."[10] As to counts 1–6, the second amended abstract indicates that Marquez was convicted by "jury." The row associated with the conviction for count 6 on the second amended abstract is entirely blank, other than listing the crime of conviction.

## II. DISCUSSION

We have reviewed the record under *Wende*, *supra*, 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106. Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to Marquez. We therefore affirm the judgment.

We order the second amended abstract of judgment corrected to indicate the correct sentencing date, that Marquez was convicted of all counts by court trial (not by jury trial), and that on count 6, Marquez was convicted on April 15, 2024, of a crime

---

[10] This date does not appear to reflect any court dates associated with this matter.

committed in 2023 and that the court imposed a consecutive sentence of one year four months (the middle term).

### III. DISPOSITION

The judgment is affirmed. The second amended abstract of judgment is ordered corrected to indicate the correct sentencing date, that Marquez was convicted of all counts by court trial, and that on count 6, Marquez was convicted on April 15, 2024, of a crime committed in 2023 and that the court imposed a consecutive sentence of one year four months (the middle term). The trial court is directed to prepare an amended abstract of judgment and to send a copy to the Department of Corrections and Rehabilitation.

_____
Danner, Acting P. J.

WE CONCUR:


_____
Lie, J.



_____
Bromberg, J.




**H052283**
***People v. Marquez***